Thank you your honor. I guess it's now good afternoon. My name is Tom Patton. I represent both Jermaine and Rico Speed in this appeal. Both Jermaine and Rico Speed's sentences should be vacated and vacations should be remanded for resentencing because the district court committed plain error in imposing three of the conditions of supervised release. Initially the district court imposed a condition that, and I'm not going to refer continually refer to both Mr. Rico and Jermaine because the language is identical, both the language of the conditions and the language of the reasons for the conditions are absolutely identical in both cases. The first condition that we're challenging is the condition that the defendant shall not knowingly meet, communicate, or otherwise interact with any person whom he knows to be a convicted felon or to be engaged in or planning to engage in criminal activity unless granted permission to do so by the probation officer. Now we have no problem with the idea that people on supervised release should not be communicating or otherwise interacting with people who are committing crimes. That makes eminent sense. But to take that further, and I should say that's the reason the district judge gave for imposing the condition was that they didn't want the speeds to be around people committing crimes and that makes perfect sense. But it does not make perfect sense, in fact it makes no sense, to believe that any person who has been convicted of a felony, no matter when that conviction occurred, no matter what that conviction was for, no matter what that person's history and characteristics are, that that person is an individual that somebody on supervised release should not be associated with. And I'd submit to you that it's also just bad as a policy reason. Every time somebody gets sentenced in federal court, but in state court too, the message, either implicit but oftentimes very explicit, that the judge gives that person is, all right, you've been sentenced, go serve your time, take advantage of what you have, become a productive member of society. That's what we want you to do. But then if in the next breath the judge imposes a condition that says, oh, if you can't be around felons because they're bad people, well, the person who's just getting sentenced is a felon. I've been doing this for 19 years in federal court, I've never represented somebody who got convicted of a misdemeanor. They're all felons. And so at the same time you're telling the person, go serve your sentence and become a productive member of society. You're then turning around and telling them, we're never going to let you be a full member of society. You're always going to be a second-class citizen that's not trustworthy and you can't have folks on supervised release being around you. And this is not an academic exercise. People get revoked for violating this condition, even if, when they're associating with a person who has the felony conviction, even if they're not doing anything illegal. A very common way it happens is if there's a traffic stop for a minor traffic violation, maybe there's not even a ticket issue, maybe there's a traffic ticket issue, but they identify all the people in the car. One of the people's on supervised release, they call the police, call the probation officer, or under the conditions, the person on supervised release has to report contact, or excuse me, contact with law enforcement to the probation officer. The probation officer finds that one of the other people in the car is a convicted felon, and people get revoked for that. Even though they're not doing anything illegal, or maybe they violated a traffic violation, but people get revoked for that and go to jail. So it's not just an academic exercise. And both speeds in this case, they're going to be on supervision for eight years. Mr. Patton, I'm going to stop you because I wanted to ask you something, and time is very short. Are the speeds aware that if they prevail on appeal, their entire sentence will be vacated and remanded, putting their below the guidelines sentences at risk? I mention this because with some very small changes in wording, the disputed conditions of supervisor's release can probably be reimposed. And I'm wondering what they're hoping to gain from this appeal. Your Honor, both Germaine and Rico Speed have been informed that there is a risk that this appeal. And, look, obviously our office does a lot of these appeals, and we get asked this question quite often. We understand the risk, and we don't do this without discussing it with our clients and discussing with them the potential benefits and the potential risks. And, look, it's pretty obvious that what we're hoping for on remand, if we get a full remand, we're going to ask for a lower sentence. You know, I'm not going to play cat and mouse with the court. That's what we're going to try and do. I think the risk that they will get a higher sentence, and, look, one of our clients got a higher sentence on remand in these situations a couple weeks ago in front of Judge Bruce. So I know it's a risk. But in these particular cases, Judge Bruce went out of his way to say that this is the sentence he would impose regardless of what the sentencing guidelines were. And I think it would be very difficult to support imposing a higher sentence on remand in this case. But, yes, Judge Romer, this has been discussed with both the Speed cousins, and they understand that. Well, supervised release is, you know, were they in for 18 years or something? Yes, they got identical sentences. Eighteen years in prison, eight years of supervised release. You know, there's good time and other things that could shrink that somewhat. But, you know, we seem to be talking about supervised release a lot now. And it goes on about what can be done and how long the sentence is and whether it's even relevant. How old are they? Are they similar age? Rico is 27 and Jermaine is 32. Okay. So, you know, they're going to be older and better or something. But I just wonder when we're getting all worried about the supervised release, it says don't associate with the felon. Well, you know, what if your relative is a felon? Yes, sir. Which I guess we have here. Yes, this is that case. It's in the same household or something or other. You know, those are things that are preventive, but I guess they're amendable if somebody really wants to challenge them. I don't have an answer. Judge Mannion, forgive me, but I cannot hear you. And I'm longing to hear you. Oh, yeah, right. No, I am. Always. Can you hear me now? Oh, yes, thank you. Is it better if I talk into this microphone? You sound great. Anyway, but we lament about a lot this supervised release. And I'm sort of frustrated with it just personally because it's a long way off. And a lot of things can change. And, therefore, when you put these sort of conditions and stretch them out, we've had a lot of discussion on this. And, you know, we had one the other day where somebody's opinion just came out, a horrible thing about child abuse. And he had, life was 85 years, and he was complaining about supervised release. Yeah, well, that was Mr. Armour. Or, excuse me, not Mr. Armour. That's Mr. Bohr. Mr. Henderson argued it the other day. And, Your Honor, I get your point. I have two responses to that. Number one, it's difficult from a defense attorney standpoint to, when you're challenging these conditions, that, in this case, these two gentlemen are going to be under these conditions for eight years. And it's really difficult to hear, like, well, why are you making a big deal about this? You know, if it's not such a big deal, why does the judge keep imposing these conditions? And why does the government keep fighting so hard to keep them? And so they must want to do something with them. Well, this is the problem with supervised release. And then we'll look at it later on when it's getting close to where he's going to get out. But we don't do that. But we don't, Your Honor. As a practitioner, if we don't raise them now, you face all kinds of waiver arguments. We already are facing waiver arguments. But we face those waiver arguments if you go back into the district court to try and modify. My experience has been the district courts aren't real anxious to modify the terms of supervised release at the request of the defendant. They just don't take it for granted. Well, it's usually going to be a different judge later on. Excuse me? In 18 years, it might be a different judge. It might be, Your Honor. How about applying to the probation officer for a modification, if that's necessary, as opposed to eliminating the conditions to patent entirely? And I mean that respectfully with regard to your argument. I appreciate what you said. But isn't there that flexibility that if you want to associate with somebody who's had a felony conviction that you inform your probation officer? Well, Your Honor, that I would submit is basically going back to pre-Thompson case law. That was in the Shave case. That's kind of what the court said is we would trust the probation office to impose these conditions reasonably. I would just submit to you that that gives the probation officer way too much power because the vast majority of the back and forth between the probation officer and the person being supervised, the judge never hears about it. So would it be your suggestion that this be remanded and that Judge Bruce track the language of Thompson? On this condition, sure. And I understand the district judges feeling some frustration. But on this condition, this court's told them exactly what they can say and get affirmed. So it's not that heavy of a lift. And on the alcohol condition, this court's made really clear that if you don't put any restrictions on the person's alcohol use, then a condition that requires alcohol treatment and testing is unreasonable because it's not doing anything. And the last condition they didn't get notice of in the Central District of Illinois, where they keep treating that last condition, don't possess a firearm, destructive device, or dangerous weapon, they keep putting it in with the mandatory condition. It's not a mandatory condition under the statute. And so that's, I don't think, asking too much to properly distinguish between what the mandatory conditions are and what the discretionary conditions are, and then give proper notice of the discretionary conditions and give a proper support for them. Now, the sentence occurred pre-Thompson? No, it was post-Thompson. It was March 9th of this year. Thompson came out in January. I think it was pre-Cappus, but I was thinking about that. I didn't look at the date of Cappus, Your Honor. I think it might be post-Cappus. Excuse me, pre-Cappus, but it's definitely post-Thompson. Post-Thompson. I see my time is up, Your Honor. Thank you, Mr. Bannon. Mr. Bannon. Good afternoon, Your Honor. Jason Bannon on behalf of the United States. Judge Bannon, I think there's an extra level of frustration in this case because the district court imposed the conditions, gave his reasons, and the defendant said, we have no problems with these conditions. We have no problems with the reasons. He asked, do you need more reason for these conditions? No. Is there anything unclear about these conditions? The answer is no. That's waiver. I believe these cases show why this court should apply standard waiver principles in the area of supervised release, because otherwise this court becomes the sentencing court on supervised release conditions, not the reviewing court of supervised release conditions. So I think, first off, there's a waiver in this case. Of course, Jermaine's attorney tried to hedge by saying that he couldn't say for In all of these recent cases involving conditions of supervised release, the court hasn't taken those generic statements as waiver, but instead has treated them as forfeitures. And the lawyer's actions are much more in line with neglect, as opposed to intentional decisions to waive rights. I think it would be a stretch to say they were waived. And this is not the same situation as Garcia-Segura, where we encourage district courts to ask defense lawyers whether the courts had adequately addressed the defendant's main arguments in mitigation. That's a subjective question that can be answered by the lawyer, because the lawyer's going to know what the main arguments in mitigation are and whether the court has addressed them. I mean, to broadly ask a lawyer anything else and then hold them to waiver if they say no, I think would be holding lawyers to impossible standard of figuring out the appeal issues on the fly without a transcript, without an opportunity to reflect. And my personal belief is that this is forfeiture, not waiver, and that the Garcia-Segura question is just not appropriate in this circumstance. Just a brief response on what Jermaine Speed's lawyer did. You're right, at the end he wanted a transcript. Earlier in the hearing, the judge asked him specifically, well, these conditions are in the PSR, and the reasons are in the PSR. Do you have a problem with any of these conditions? So they'd read the PSR, they'd read the reasons, and the lawyer said, no, we don't care about supervised release. We care about the sentence he's going to get. They had an opportunity to raise this, and I agree with you, Your Honor, that lawyers have to do things on the fly, and that makes this somewhat difficult. That's true. But then we go to plain air, even if it's not waiver, which we think it is, but we would go to plain air, and there is some tension in this court's case law as to whether supervised release conditions, even when erroneously imposed, in Capus it said, even erroneously imposed supervised release conditions may not rise to plain air because they can be modified at any time. And that's true for these conditions. They can be modified at any time, and we just don't think that's plain air. One thing with regard to associating with a felon, Mr. Patton said that this court has already said, you know, language that the district courts can say and they'll be affirmed. This is the same language that this court said in Armour would be affirmed. It's the same language. It's not a blanket prohibition on associating with felons. It's asking your probation officer, in this case, take this case, the speeds go to the probation officer and say, my cousin is a felon and I would like to go to family occasions, and he gets permission to do so. That facilitates supervision to let the probation officer know who the potentially negative influences around a supervised release are. It doesn't undermine supervision. It helps supervision. It's not a blanket prohibition on associating with felons. With respect to the notice of the dangerous weapon condition, we're in the same posture here as we were in Armour as well. And Mr. Patton is right that until recently, that condition was not in the PSR and violation memos. However, that condition is in the guidelines, and it says any time the offense conduct involves a firearm, this condition under 5D1.3 should be imposed. Lawyers are tasked with knowing the supervised release guidelines, and in this case, knowing the supervised release guideline, you would know this condition would be imposed. Well, implicitly, if it's a gun case, you have it implicitly that the dangerous weapon would be a gun. Yes, you would have notice through the guidelines that it's going to be imposed. And finally, if I could just talk about the remedy. Before you do, the government submitted a Rule 28J letter citing a case in which a defendant used a chair as a dangerous weapon. Does that not make the defendant's argument here? I mean, the condition the district court gave here doesn't prohibit defendants from using a dangerous weapon. It prohibits them from possessing it. I mean, are the speeds now prohibited from possessing chairs? Absolutely not. Why not fix the language of the condition to remove the ambiguity created for everyday objects that could, in theory, you know, be used as dangerous weapons? Your Honor, I don't believe it undermines our position. I believe it enhances, because both in Watt and in Armor, this court recognized that essentially any object can be used as a dangerous weapon and it's the defendant's use. No one would say that a chair is a dangerous weapon until it's picked up and hurled at someone and then it becomes a dangerous weapon. But what I just said was the district court didn't, you know, didn't prohibit the defendants from using a dangerous weapon. It prohibited the defendants from possessing. Yes. Okay. And that has to be read, I believe. I think that needs to be read, too, in the context of it says not possess a firearm, ammunition, destructive device, or other dangerous weapon, which would suggest that there's a commonality of items that are, in both Watt and in Armor, this court recognizes that, yes, that condition should say items that are intended to be used to harm other people, but that doesn't render the term dangerous weapon to be unconstitutionally vague. And I believe the same rationale should apply in this case. If I may, about the remedy briefly. In Kappus, this court said that defendants should stop treating, stop withholding objections on the notion that this court will continue to treat plain air and abuse of discretion the same. And that in plain air, even if we're wrong about waiver and we're wrong that this isn't plain air, plain air does not require a remand. It is a discretionary to this court of whether it's going to remand. And I think if that warning in Kappus has any force, this is the case to exercise that warning in because the defendants had full opportunity to raise all of these concerns before the district court. They didn't do so and instead do it for the first time here. And the conditions on top of it can be modified at any point, which we believe means there's another remedy, even if we're wrong about waiver and wrong about the plain air. Unless there are any other questions, I'll stand on my brief. Thanks. Mr. Pat? You've had a long day and got the argument. First of all, I want to commend your office. I always admire the representation. I know you go outside the district, and I've said that before. So I don't want to limit you here because I think you've enhanced the dialogue and hopefully our case law. The other lawyers in our office have. Thank you. So I want to give you a couple minutes to respond. Your Honor, this isn't a situation of trying to sandbag the district court. We're on plain air. We admit that we're on plain air because it wasn't raised in the district court. But the fact that it wasn't raised in the district court does not equate with trying to sandbag the district court. And I think Mr. Beaumont, Jermaine's lawyer, put it the best. He's like, look, my guy's looking at 24 years. That's what I'm worried about here. Yeah, but, Ms. Patton, let's, if we can engage you a little bit on this, so that we don't become an auxiliary set. I appreciate that. SUPFA's release is obviously a critical component, especially as a defense lawyer. You want to tilt more toward that than incarceration, I would guess, as a professional goal. Isn't the place, and assuming we are starting to evolve, and as you're aware, Armour just came out, we're trying to evolve some help for district courts and guidance for counsel, prosecution, and defense. Isn't the place, assuming these conditions are at play and at the trial level for defense counsel, because we have a high incidence of pleas versus trials, as you well know after two decades at this. Isn't that where you should evolve some dialogue with the district court about being flexible, asking for an initial modification or some condition about it? I mean, as opposed to just suggesting we've got to decide whether a chair versus a Glock is a dangerous weapon. Shouldn't we have at the trial level defense counsel speaking to some tailoring if they feel that the expansiveness of the condition is too great? Absolutely, that's the preferable course, Your Honor, clearly, and not just with these issues, with any issue. It's much better to raise it in front of the district court and try and hash it out there because that's the sentencing court and you are a court of review, and that's valid, and we are trying to work within our office and with CJA counsel. These weren't CJA counsel, but I know Mr. Bowman, he's a really good lawyer. I don't know Rico's lawyer, and we're trying to do that. We've had meetings with probation officers and we've had discussions with the judges. Yeah, but you received those conditions, right, I mean, in advance of the trial. I mean, excuse me, in advance of the sentencing. Yes, in this case they did other than the dangerous. And I'm not speaking specifically to this case now, although we've got to look to this case because that's our responsibility and we've certainly got to go forward in speaking to others. But if we're going to tackle this issue, it seems to me, if the probation department presents the conditions, and I understand though it's somewhat distant, I used to be a district judge quite a while ago, I understand that once past the hard sentence, the custodial sentence, sometimes the air goes out of the balloon a little bit in the proceedings, and I'm not being critical of any of the players. No, it's true. But having been in receipt of a condition, which is adopted in whole or in part by a district judge, and using whatever guidelines hopefully we're advancing here, isn't that the arena to speak to the specifics of this case, of this defendant, or in this case a couple of defendants, how reasonable, though perhaps constitutional, the condition is in its broadest sense? Yes. I mean, I'll tell you, in cases after this, Judge Bruce has not imposed this condition because, if we point out to him, it really doesn't do any work. The condition that you not commit a crime, they're felons so that by definition they're committing a crime if they have a firearm or ammunition, and under federal law the term firearm includes a destructive device. I would submit the real focus of the dangerous weapon issue is, you don't want them using something to try and hurt the probation officer, but if they do that, they're committing a crime, so it doesn't really do much lifting. By through arguing it, and quite frankly after this appeal was filed, most likely because of the issue being raised, the district judge just hasn't been imposing it. And so some of it is just the process, and I know that I'm quite confident you all are getting tired of getting briefs that do nothing but conditionally dissupervise police. No, no, I don't want to convey that. It's been obviously an area of appeal that we've been dealing with for some months now. But my point is going to be, it hasn't been that long for cases to work through where the sentencing occurred after Thompson and after Katniss. While we've gotten a fair amount of agreement at the district court level about conditions, we still, quite frankly, are litigating some of the conditions where, because, you know, look, probation comes at this from a different angle than we come at it, in that that's just the reality of the situation, and the U.S. Attorney's Office comes from a different angle. No matter how much you want to try and in good faith work to get it worked out, some things we're just going to disagree on. Yeah, but I'm speaking to the venue of where you worked that out. It seems to me if we have a criminal justice system where we're spending a good deal of time at the trial level not trying cases because the high percentage of pleas, as you well know, Mr. Bratton, then the focus has got to be on dealing with this condition analysis at the trial level. I can at least speak for the office that I work at. We are attempting to litigate some of these outstanding issues in the district court so that when they come to this court they have been litigated. But the flip side is we get appointed to a case, we look at the conditions, we have to see are there non-frivolous issues that can be raised, and that's the situation that we're in. If I could just add, whatever the case decides, right now the way the written judgments are written, the alcohol condition has the added language in the written condition that they're prohibited from using alcohol. That has to be a nullity because that was not imposed as part of the oral sentence. So at minimum those judgments would have to be amended to take that language out because otherwise 18 years from now when somebody is looking at what are the conditions of supervised release and if they pull out that written judgment, if we don't get that language taken out, it's going to be there. Thank you, Mr. Bratton. Anderson? Spoon? The case is taken under advisement and the court will stand in recess.